### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO. 4:05CV-139-JHM**

**JOHN R. COMBS, VICKI COMBS,**                                       **PLAINTIFFS**
**JODY COMBS, LEE A. DEW,**
**ALOMA DEW, D. WAYNE SANDIFER,**
**BARBARA JOHNSON, STANLEY JOHNSON,**
**JOE S. BRITTON, MARGARET B. BRITTON,**
**JOHN ROBERT COCKRUM, JANE COCKRUM,**
**DONALD DAVENPORT AND SHIRLEY DAVENPORT**

**VS.**

**KENTUCKY WESLEYAN COLLEGE**                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment [DN 19, DN 20]. Plaintiffs have filed a breach of contract suit against their former employer, Kentucky Wesleyan College, asserting that it wrongfully terminated Plaintiffs' health insurance benefits. Plaintiffs' alternative claims raise issues involving the Employee Retirement Income Security Act of 1974 ("ERISA"). Fully briefed, this matter is ripe for decision.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the

absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Since the Parties do not dispute the material facts in this case, summary judgment is an appropriate means of resolving the legal issues underlying this dispute.

## II. FACTS

Effective August 15, 2005, Defendant, Kentucky Wesleyan College ("KWC") terminated the health insurance coverage that it had previously provided to all retirees and their dependents under the KWC Employee Health Care Plan. Plaintiffs, who are KWC retirees or dependents of KWC retirees, brought this action challenging the termination of their health insurance benefits. Plaintiffs assert claims for breach of contract,[1] estoppel, and ERISA breach of fiduciary duty. Plaintiffs maintain that KWC promised these health insurance benefits to the Plaintiffs in both (1) individual contracts executed by KWC and some of the Plaintiffs, and (2) provisions set forth in Faculty Handbooks. In defense of its actions, KWC maintains that it had the right to terminate Plaintiffs' health insurance benefits at any time pursuant to the language in the Employee Health Care Plan documents or the summary plan descriptions related to the Employee Health Care Plans. The individual contracts, the Faculty Handbooks, and the KWC's summary plan descriptions are discussed

---

[1]This claim could also be interpreted as a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1).

below.

## A.  Individual Contracts Between Plaintiffs and Defendant

All of the Plaintiffs except Donald and Shirley Davenport have individual contracts with KWC executed on or about the time of their retirement.  A brief discussion of the provisions of those individual contracts is necessary.

On December 17, 2001, John R. Combs and KWC executed an "ELECTION AND RELEASE PHASE OUT PLAN."  KWC offered a Phase Out Plan to tenured faculty members who would be 65 years of age by December 31, 2001 and agreed to retire at the end of the 2001-2002 academic year.  John Combs accepted the offer and entered into a contract with KWC memorializing the terms.  Section III on page 2 of that agreement provides:

> When I retire as a full-time tenured professor, I will switch my health coverage to Medicare and receive a Medicare supplement provided and paid for by the College.  The College will provide and pay the cost of health insurance (family coverage subject to an employee contribution by me or Vicki Combs towards such costs, consistent with the College's requirements for full-time employee contributions at the time) for my wife, Vicki Combs, and my dependent son, Jody Combs, until each of them is 65 years of age at which time each of them will receive a Medicare supplement.

(Combs Contract at 2.)

Lew A. Dew and KWC executed a "RETIREMENT AGREEMENT" dated March 29, 1994.  In consideration for his agreement to retire, KWC agreed to the following:

> Lee Dew shall be entitled to the medical coverage, including the dependent coverage option, for Aloma and Spencer Dew, provided by K.W.C. for its full-time employees.  On his birthday, September 22, 1996, Lee Dew's said medical coverage insurance plan will convert to provide Medicare Supplement.  Dependent coverage for his spouse Aloma may be continued until age 65 under the same provisions and premium charges offered active

employees.

(Dew Contract at 2, ¶ 3.)

D. Wayne Sandifer and KWC executed an "EARLY RETIREMENT AGREEMENT"

dated May 2, 1996.  Pursuant to this contract, KWC agreed to the following:

> D. Wayne Sandifer shall be entitled to the single medical coverage provided by K.W.C. for its full-time employees until his birthday, June 13, 2002, after which K.W.C. will have no obligation to said medical coverage insurance plan, except to provide Medicare Supplement for the retiree.

(Sandifer Contract at 2, ¶ 4.)

On March 11, 1993, Barbara A. Johnson and KWC entered into an "EARLY

RETIREMENT AGREEMENT."  In exchange for Barbara Johnson's early retirement, KWC

agreed to the following:

> Barbara Johnson shall be entitled to the medical coverage, including the dependent coverage option, for Stanley Johnson, her spouse, provided by K.W.C. for its full-time employees until her birthday, July 29, 1999, after which K.W.C. will have no obligation to said medical coverage insurance plan except to provide Medicare Supplement. (including spouse)

(Johnson Contract at 2, ¶ 4.)

John Robert Cockrum and KWC entered into an "EARLY RETIREMENT

AGREEMENT" dated March 11, 1993.  In exchange for John Cockrum's early retirement,

KWC agreed to the following:

> John Cockrum shall be entitled to the medical coverage, including the dependent coverage option, for Jane Cockrum, his spouse, provided by K.W.C. for its full-time employees until his birthday, Sept. 3, 1999, after which K.W.C. will have no obligation to said medical coverage insurance plan, except to provide Medicare Supplement for the retiree.  Dependent coverage for his spouse, Jane Cockrum, may be continued until the age of 65 under the

4

same provisions and premium charges offered to active employees.

(Cockrum Contract at 2, ¶ 4.)

Both Joe S. Britton and Margaret B. Britton negotiated an early retirement agreement. The Brittons signed their respective agreements on October 15, 1996. Both agreements provide:

> The provisions for your early retirement are in accordance with the Faculty Handbook. You will be given credit for the maximum 25 years of service in figuring your early retirement stipend. . . . Further, your health insurance provision will be continued according to the current plan until age 65.

(Joe Britton Contract and Margaret Britton Contract.)  After Mr. and Mrs. Britton turned 65 years of age, KWC provided them with Medicare Supplement insurance pursuant to its Faculty Handbook.  The Faculty Handbook in existence at the time the Brittons retired was the May 24, 1994 Handbook.

## B. The Davenports

Donald Davenport retired as a professor in 1999 and his wife, Shirley Davenport, retired from her position as secretary in the library in 2000.  They retired in reliance on the versions of §§ 3.1.2 and 3.2.3 of the Faculty Handbook which the Davenports claim guaranteed them Medicare supplement coverage during their retirement.  The Faculty Handbook in existence at the time Donald Davenport retired was the 1998 Handbook.  The Employee Handbook in effect at the time Shirley Davenport retired was the 1996 Handbook.[2]

---

[2]The only Employee Handbook provided by the parties is the Employee Handbook effective December 1, 1996.

5

## C.  Faculty and Employee Handbooks

The 1983 Faculty Handbook provides that "[a]s a supplement to the Medicare program, the College continues coverage and pays the cost of Health Insurance Benefits (only) for retirees of the College who were enrolled for these benefits as active members." (1983 Faculty Handbook at 38A, " Medical Insurance for Retirees.")

Similarly, the 1994 Faculty Handbook includes a provision, § 3.1.2, entitled "Normal Retirement" which provides in relevant part:

> In consideration of the valuable and dedicated service a faculty member has performed in his/her tenure at KWC, certain benefits are being granted to the retiree.  In addition to the annuities which constitute the Retirement Program of the College, retirees are entitled to the following benefits:
>
> a.  Medical Insurance as described in Section 3.2.3.

(May 24, 1994 Faculty Handbook, § 3.1.2.)

Section 3.2.3, entitled "Medical Insurance for Retirees," provided that "[a]s a supplement to the Medicare program, the College provides Medicare supplemental coverage and pays the cost for retirees of the College who were enrolled for these benefits as active tenured faculty members."  (Id. at § 3.2.3.)   The 1994 Faculty Handbook also contains §3.1.3, entitled "Early Retirement," which provides:

> A plan for early retirement is offered to full time members of the faculty only when it meets the need of the college for staffing adjustments.  The plan's provisions include:
>
> a.     An annual stipend amounting to one percent of the individual's salary times his/her years of service up to 25 years;
>
> b.     The stipend terminates when the individual becomes 65 years

6

old or after a maximum of three years;

c.     The recipient is entitled to the same health insurance benefits as continuing faculty.[3]

(Id. at § 3.1.3.)   Thus, under the terms of this Faculty Handbook, if the faculty member retired before age 65, the retiree was provided the same health insurance as active employees until the retiree reached age 65.  At age 65, the retiree would receive Medicare Supplement insurance.  If the faculty member retired at or after 65, the retiree received Medicare Supplement insurance only. (Id.) The 1998 Faculty Handbook contains essentially the same provisions set forth above.

Cindra Stiff, Vice President of Finance at KWC, testified that prior to the May 24, 1994 Faculty Handbook, there had been no written policies concerning early retirement.  Stiff testified that the KWC procedure for handling early retirement of its faculty prior to the May 24, 1994, policy was that the faculty member and the academic dean would discuss the terms of the early retirement.  (Stiff Dep. 44 -46).

The Employee Handbook, effective December 1, 1996,  provided the following:

RETIREE GROUP HEALTH INSURANCE

As a supplement to the Medicare program, Kentucky Wesleyan College provides Medicare supplemental coverage and pays the cost of said coverage for retirees of the College if the retiree meets the following eligibility criteria:

Eligibility Criteria
1.     the retiree must be the Federal Medicare eligibility age

---

[3]The 1998 Faculty Handbook includes "until age 65 (See Section 3.2.3)" after the word faculty in subsection c.

(presently 65 years old) and
2.      the retiree must have served Kentucky Wesleyan College for a
        minimum of 25 years of continuous full-time service.

(1996 Employee Handbook, KWC 000591, KWC 000616).

### D. KWC's Summary Plan Descriptions

The Employee Retirement Income and Security Act of 1974 ("ERISA") requires

KWC to provide summary plan descriptions ("SPD") to its employees and retirees setting

forth the terms of the health insurance plan provided to these employees and retirees.

#### *1994 SPD*

The 1994 SPD,[4] the oldest SPD provided to the Court, provides in part as follows:

> Your employer establishes this Plan with the intention of maintaining it for an
> indefinite period of time.  However, your employer reserves the right to amend
> or terminate this Plan at any time, in compliance with the provision contained
> in this Summary Plan Description.

(1994 SPD at 1; KWC 003719.)  Additionally, the SPD also provides in relevant part:

> PLAN AMENDMENTS AND TERMINATION
> The Employer established this Plan with the intention of maintaining it for an
> indefinite period of time.  However, the Employer reserves the right to amend
> or terminate this Plan at any time, in compliance with the following provisions:
>
>> A.      The Employer shall have the right to amend this Plan in whole
>>         or in part.  Amendments shall be by the written approval of an
>>         authorized  officer  of  the  Employer.    No  amendment  may

---

[4] This SPD provided by KWC does not contain a clear effective date.   The Court is of the
opinion that the effective date of this Plan is September 1, 1994.  Given the reference in the SPD
to the Family Medical Leave Act of 1993, it is likely that it was published after February 5, 1993
(the effective date for the FMLA).  (KWC 003730.)  Additionally, given handwritten notations
found in this plan, it is the Court's opinion that the original plan was adopted in 1994, and the
handwritten notations are amendments or proposed amendments to the plan for the 1995-1996
school year.  (KWC 003729.)

retroactively affect employees' benefits unless necessary to conform the Plan to the requirements of ERISA, the Internal Revenue Code of 1896, as amended, or regulations issued under those statutes.

B.     The Employer reserves the right at any time to terminate the Plan by the written approval of an authorized officer of the Employer.

(1994 SPD at 48; KWC 003743.)  Finally, with respect to retiree coverage, the SPD provides:

If you have retired, you and your covered Dependents will be eligible for Medical Expense Benefits.  No other coverage is available to retired employees under this Plan.  If you are eligible for Medicare, benefits under this Plan will be reduced by Medicare payments to the extent allowed by Federal law.  If you fail to enroll for Medicare A and B, benefits will be paid as if you had enrolled.  The Plan will estimate Medicare's payments and reduce the Plan's benefits accordingly.

(1994 SPD at 20; KWC 003729.)

### *1999 SPD*

The 1999 SPD contains the provisions by which KWC reserved the right to amend or terminate the Plan.  (1999 SPD at 2, 45; KWC 003614, KWC003650.)  It also contains the following provision regarding Retiree Eligibility:

Employees who retire from active service and are eligible for Medicare benefits will be provided Supplemental Medicare insurance benefits for themselves by enrollment in the College's group health insurance plan for retirees.  Except for negotiated early retirement agreements, this retiree health insurance benefit is limited to employees who have attained Medicare eligibility by the date of retirement.  Health insurance coverage and Medicare supplement for dependents is limited to actively working employees, unless otherwise negotiated in a retirement agreement.

Benefits for the retiree under this Plan will be reduced by Medicare payments to the extent allowed by Federal law.  If you fail to enroll for Medicare parts

A and B, benefits will be paid as if you had enrolled.  The Plan will estimate Medicare's payments and reduce the Plan's benefits accordingly.

(1999 SPD at 6; KWC 003618.)

### *9/1/2001 SPD*

The SPD effective September 1, 2001, also contains the provisions by which KWC reserved the right to terminate the plan. (2001 SPD at 52; KWC 003574.)   It also provides the following provision related to Retiree Eligibility:

> ***Retired employees*** who retire from active service and are eligible for ***Medicare*** benefits may continue coverage under this ***Plan*** as a supplement to ***Medicare*** benefits by paying the applicable contribution for ***employee*** coverage. Coverage under this provision of the ***Plan*** is limited to actively working ***employees***, unless otherwise negotiated in a retirement agreement.
>
> Benefits for the ***retiree*** under this ***Plan*** will be reduced by ***Medicare*** payments to the extent allowed by Federal law.  If the ***retiree*** fails to enroll for ***Medicare*** Parts A and B, benefits will be paid as if the ***employee*** had enrolled.  The ***Plan*** will estimate ***Medicare*** payments and reduce the ***Plan's*** benefits accordingly.
>
> Except for negotiated early retirement agreements, ***retiree*** coverage is limited to ***employees*** who have attained ***Medicare*** eligibility by the date of retirement. While the ***employer*** expects ***retiree*** coverage to continue, the ***employer*** reserves the right to modify or discontinue ***retiree*** coverage at any time.

(9/1/2001 SPD at 30, KWC 003552.)

### III.  BREACH OF CONTRACT CLAIMS

Plaintiffs maintain that the individual contracts with all the KWC retirees, except Donald and Shirley Davenport, clearly obligate KWC to provide health insurance benefits for the life of the retirees and their spouses and family members, where applicable.  With respect to the Davenports, Plaintiffs argue that certain provisions of the Faculty Handbook

create a contractual obligation for KWC to provide health insurance for life as part of their retirement.  Defendant argues that Plaintiffs' breach of contract claims are preempted by ERISA, and as a result, the Court should dismiss the state law claims.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  "[W]hen a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." Briscoe v. Fine, 444 F.3d 478, 498 (6th Cir. 2006) (citation omitted).  A plaintiff may not evade ERISA's expansive preemption by "merely attach[ing] new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery benefits, for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA." Smith v. Provident Bank, 170 F.3d 609, 615 (6th Cir. 1999).

"In keeping with the Supreme Court's recognition of the broad scope of ERISA preemption, the Sixth Circuit 'has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA.'" Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 452 (6th Cir. 2003)(citing Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991)).  See also Briscoe, 444 F.3d at 498 ("'[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.'" Id. at 498 (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004)).  Thus, in deciding whether state-law claims are preempted by ERISA, the Court must consider "the kind of relief that plaintiffs' seek, and its relation to the . . .

11

plan." <u>Ramsey v. Formica Corp.</u>, 398 F.3d 421, 424 (6th Cir. 2005).

Plaintiffs claim that KWC breached its contracts to provide health insurance benefits for the retirees and their dependents, where applicable. Plaintiffs seek an order from the Court "requiring KWC to specifically perform its contracts with the plaintiffs to provide them health insurance benefits" and "estopping KWC from terminating the health insurance benefits they agreed to provide the plaintiffs." (Complaint at p. 11.)  Plaintiffs' breach of contract claims are essentially claims for recovery of an ERISA plan benefit – health insurance coverage.  Clearly, these claims "relate to" the benefit plans at issue in this case. <u>See</u>, <u>e.g.</u>, <u>Daniel v. Eaton Corp.</u>, 839 F.2d 263, 266 (6th Cir. 1988) (to the extent that plaintiff sought recovery from former employer for breach of contract arising from employer's refusal to pay plaintiff early retirement benefits, claim was preempted by ERISA).  Accordingly, the Court finds that the Plaintiffs' state-law claims against KWC are preempted by ERISA.

### IV.  ERISA CLAIMS

Count 1 of Plaintiffs' complaint asserts a claim to enforce the agreements made by KWC to provide the Plaintiffs' health insurance benefits.  Count 2 of Plaintiffs' complaint asserts a claim for estoppel.  While Plaintiffs' state law breach of contract and estoppel claims are preempted by ERISA, the Court finds that Count 1 constitutes a claim to recover benefits due the Plaintiffs pursuant to 29 U.S.C. § 1132(a)(1)(B) and Count 2 constitutes an equitable estoppel claim under ERISA.  <u>See</u> <u>Cassidy v. Akzo Nobel Salt, Inc.</u>, 308 F.3d 613, 617 n. 5 (6th Cir. 2002) ("Although plaintiffs' cause of action was originally filed as a state law contracts claim, we may construe it as a claim for benefits under ERISA § 502(a)(1)(B)

12

without materially altering the nature of the issues before us, in order to avoid any preemption issues."). Additionally, in Count 3, Plaintiffs assert an ERISA breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(3).

### A.  ERISA Claim for Benefits

Title 29 U.S.C. § 1132(a)(1)(B) authorizes the Plaintiffs as participants and/or beneficiaries to bring a civil action to recover benefits due them under the terms of the plan. Plaintiffs assert that if ERISA applies, KWC created a vested right to health insurance benefits, including medicare supplements, via negotiated early retirement contracts and faculty handbook provisions.

Welfare plans, such as health care plans, are specifically exempted from vesting requirements to which pension plans are subject. 29 U.S.C. § 1051(1).  "[E]mployers 'are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'" Sprague v. General Motors Corp., 133 F.3d 388, 400 (6th Cir. 1998)(citing Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995)).  However, employers may vest welfare benefits if they choose to do so.  Sprague, 133 F.3d at 400; See also In re White Farm Equip. Co., 788 F.2d 1186, 1193 (6th Cir.1986) ("the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated."); Boyer v. Douglas Components Corp., 986 F.2d 999, 1005 (6th Cir. 1993); International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294 (6th Cir. 1991). "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly." Sprague,

133 F.3d at 400.

In order to determine whether the retirement health care benefits of Plaintiffs were vested when Plaintiffs agreed to retire, the Court must determine the contours of the ERISA plan. Plaintiffs argue that Plaintiffs' health care insurance and benefits were provided by their individual retirement agreements and relevant provisions of the faculty handbook. Essentially, Plaintiffs contend that the individually negotiated early retirement contracts and/or faculty handbooks are ERISA plans, ERISA plan amendments, or should be enforced as a matter of federal common law. In contrast, Defendant argues that the retirement health care benefits of all retirees, including Plaintiffs, were provided under KWC's Employee Health Care Plan. According to Defendant, the SPDs for the KWC Employee Health Care Plans contained explicit reservation of rights allowing KWC to amend, modify, or terminate the Plan, including retiree health insurance coverage. Defendant maintains that the retirement contracts and handbooks on which Plaintiffs rely are neither ERISA plans themselves, modifications to the plan, nor enforceable as a matter of federal common law.

## 1. Retirement Contracts of Combs, Dew, Sandifer, Johnson, and Cockrum

### a. An Erisa Plan

An "employee welfare benefit plan" and "welfare plan" mean "any plan, fund, or program which was . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1)(A). In

14

determining whether the negotiated early retirement contracts are ERISA plans, the "court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, [the class of ] beneficiaries, source of financing, and procedures for receiving benefits." International Resources, Inc., 950 F.2d at 297 (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)).  "The purported plan need not be formal or written to qualify as an ERISA benefit plan, but rather, the court must look to the 'surrounding circumstances' to see if the four factors have been met."  Williams v. WCI Steel Co., Inc., 170 F.3d 598, 602-603 (6th Cir. 1999).  See also Hughes v. White, 467 F. Supp. 2d 791, 801 (S.D. Ohio. 2006).  Defendant argues that none of the retirement contracts at issue satisfy ERISA's requirements and none of them can be considered plan documents.  The Court disagrees.

A review of the retirement contracts of John Combs, Lee Dew, D. Wayne Sandifer, Barbara Johnson, and John Cockrum, reflect that the contracts satisfy the minimum requirements for establishing an ERISA plan.[5]  The intended benefits are continued medical coverage up to age 65 for the retiree, spouse and dependent children, and medicare supplement coverage thereafter.  The class of beneficiaries is the individual retiree and where applicable, his family.  Williams v. Wright, 927 F.2d 1540, 1545 (11th Cir. 1991)("[W]e do not interpret *Donovan*'s use of the word 'class' as an absolute requirement of more than one beneficiary or that a plan tailored to the needs of a single employee can not be within

---

[5]The retirement contracts of the Brittons are addressed below.

15

ERISA."). The source of the financing is likewise clear. KWC contracted to provide or pay for the medical coverage and medicare supplement coverage. See id., 927 F.2d at 1544 ("the payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage"); Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 18 (1987).

Finally, the procedures for receiving the benefits provided by the retirement contracts are also sufficiently ascertainable: upon retirement, the Plaintiff retirees were to receive medical coverage up to the age of 65 and a medicare supplement thereafter. See Minnis v. Baldwin Bros. Inc., 150 Fed. Appx. 118, 120 (3d Cir. August 18, 2005); Cvelbar v. CBI Illinois, Inc., 106 F.3d 1368, 1378-79 (7th Cir. 1997); Cecil v. AAA Mid-Atlantic, Inc., 118 F. Supp. 2d 659, 664-65 (D. Md. 2000)(court held that a supplemental retirement agreement between the employer and a single employee constituted a free-standing ERISA pension plan; court found that the supplemental agreement provided for an ongoing administrative scheme, described the intended benefits, defined the beneficiary class as the employee alone, and established a procedure for the employee to receive the benefits, to wit: he would receive them directly from the employer). See also Richmond v. NCR Corporation, 227 F. Supp. 2d 802, 819 (S.D. Ohio. 2002)(cites Cecil but finds no evidence that plaintiffs entered into a separate bargain with defendant for any additional benefits). Additionally, the contracts also allocate "ongoing operational and administrative responsibilities to the employer." Deboard v. Sunshine Mining and Refining Co., 208 F.3d 1228, 1239 (10th Cir. 2000)(citing Fort Halifax Packing Co., 482 U.S. at 12.). Under the terms of the retirement contract, KWC is required to regularly pay the health insurance premiums and medicare supplement premiums

16

for Plaintiffs.   Therefore, the Court finds the retirement contracts qualify as ERISA plans.

### b. *Amendment to the SPD*

Alternatively, if these retirement contracts are not free-standing ERISA plans, the Court finds that they are amendments of the Employee Health Care Plans in effect at the time these Plaintiffs retired.  The Sixth Circuit has recognized that "employers 'are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'" Sprague, 133 F.3d at 400 (citation omitted).   A "plan administrator may amend a plan only through formal procedures specified in the plan documents, 29 U.S.C. § 1102(b)(3), not through informal communications." Crosby v. Rohm & Haas Co., 480 F.3d 423, 428 (6th Cir. 2007).  The SPDs of the KWC Employee Health Care Plans in question all generally provide that the Employer shall have the right to amend the Plans in whole or in part. Significantly, the SPDs state that "[a]mendments shall be by the written approval of an authorized officer of the Employer."  (1994 SPD at 48; KWC 0003743.)  In the present case, all the retirement contracts are independent contracts, contain the signatures of an authorized officer of KWC, clearly change the duration of benefits for the contracting Plaintiffs, and at the very least, constitute an amendment to the Employee Health Care Plans.

Defendants contend that even if these contracts could somehow be construed as Plan amendments, the reservation of rights clause in the SPDs defeat Plaintiffs' claims.  "'[A] reservation-of-rights provision is inconsistent with, and in most cases would defeat, a claim of vested benefits. . . .'"  Stearns v. NCR Corp., 297 F.3d 706, 712 (8th Cir. 2002)(citation omitted).  Contrary to Defendant's argument, the Court sees no reason why the language in

17

the Employee Health Insurance Plan should take precedence over the retirement contracts' clear provisions for medical coverage until 65, and for medicare supplement thereafter. Diehl v. Twin Disc, Inc., 102 F.3d 301, 307 (7th Cir. 1996). In fact, the individual retirees, with the exception of the Brittons and Davenports, entered into negotiated early retirement contracts with KWC that provide for the exact same health care benefits as those provided to all retirees pursuant to the faculty handbooks and the Employee Health Care Plans in effect at that time, with one exception – there is no right retained by KWC to subsequently terminate the benefits provided. The execution of the early retirement contracts "vested" continued medical coverage and medicare supplements in the retiree despite whatever right KWC may have had to terminate retiree coverage contained in the original Plan. Id. Otherwise, there would have been no reason to separately negotiate an early retirement contract.

### c. Federal Common Law

Alternatively, Plaintiffs argue that the individual contracts should be enforced as a matter of common law. "An employer and employee may contract for post-employment welfare benefits." Bertram v. NuTone, Inc., 107 F. Supp. 2d 957, 965 (S.D. Ohio 2000)(citing In re White Farm Equipment Co., 788 F.2d 1186 ("the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." Id. at 1193.). The Sixth Circuit has specifically recognized that "an individual or a union may enforce a promise by an employer to provide pension [or welfare] benefits that are in excess of the minimum

18

standards guaranteed by ERISA." United Steelworkers of America, Local 2116 v. Cyclops, Corp., 860 F.2d 189, 197 (6th Cir. 1988)(citing In re White Farm Equipment Co., 788 F.2d 1186). See also International Resources, Inc., 950 F.2d 294.[6] "[W]here an employer bargains away its right to modify an ERISA welfare plan, the terms of that modification, though governed by ERISA, are to be enforced pursuant to the federal common law of contracts." Richmond v. NCR Corp., 227 F. Supp. 2d 802, 812 n. 7 (S.D. Ohio 2002)(citing Cattin v. General Motors Corp., 955 F.2d 416, 425 n. 6 (6th Cir. 1992)); see also Bertram, 107 F. Supp.2d at 965 ("if a retirement plan creates rights in excess of those established by ERISA, then those rights may be enforceable in contract under federal common law").  In fact, other courts have likewise found that "where employers and employees enter into severance agreements not accounted for under the terms of a pre-existing ERISA plan, the terms are to be construed in accordance with contract principles of federal common law." Richmond, 227 F. Supp.2d at 812 n. 7.

In the present case, the negotiated early retirement contracts provide the retiree, and

_____

[6]The Sixth Circuit in International Resources stated:

New York Life would have us believe that a welfare plan will *never* vest, because there is no statutory vesting requirement, or that such a welfare plan can only vest if it has explicit provisions providing for vesting in the plan documents. New York Life, however, misstates the law of In re White Farm Equipment Co., 788 F.2d 1186, 1193 (6th Cir.1986). There, we found that we will not construe ERISA as providing a *mandatory point* for welfare benefits to vest. Nonetheless, a court may look to the parties intent to determine when vesting should occur. Such intent may be demonstrated by "agreement or by private design." Id.

950 F.2d at 301.

19

other family members where applicable, with medical coverage until 65 and a medicare supplement thereafter. As discussed above, the contracts in question provide for the exact same health care benefits as those provided to all retirees pursuant to the faculty handbooks and the Employee Health Care Plans, with one exception – there is no right retained by KWC to subsequently terminate the benefits provided. By entering into the negotiated early retirement contracts, KWC clearly demonstrated its intent to vest continued medical coverage and medicare supplements in the retiree and created rights in excess of those established by ERISA. Thus, assuming that the individual contracts are not plans, or alternatively amendments to the original plan, the Court would enforce the negotiated early retirement contracts of Plaintiffs, John Combs, Lee Dew, D. Wayne Sandifer, Barbara Johnson, and John Cockrum, as a matter of federal common law based on the above case law.

### d. KWC's decision to Terminate Medical Coverage and Medicare Supplements

Plaintiffs challenge KWC's decision to terminate medical coverage and medicare supplements. A denial of benefits challenged under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan. Williams v. International Paper Co., 227 F.3d 706, 710 (6th Cir. 2000). Where an ERISA plan expressly affords discretion to the administrator to make benefit determinations, a reviewing court should apply the arbitrary and capricious standard to the administrator's actions. Id. at 711. Here, the retirement contracts specifically provide for continued medical coverage until 65

and a medicare supplement thereafter.  No discretion is afforded KWC in the maintenance of continued medical coverage and medicare supplement coverage.  Therefore, the Court will utilize a *de novo* standard of review.[7]

Plaintiffs, John Combs, Lee Dew, D. Wayne Sandifer, Barbara Johnson, and John Cockrum, negotiated valid contracts with KWC setting forth the terms of their retirement. The Court has found that these retirement contracts qualify as ERISA plans.   All of the retirement contracts in question provide for the exact same benefits[8] given to all retirees pursuant to the faculty handbooks, with one exception – the benefits provided in the Plaintiffs' retirement contracts are not subject to change.  These contracts demonstrate a clear intent on the part of KWC to provide Plaintiffs with vested health insurance benefits. Thus, KWC's termination of the medical coverage and medicare supplement coverage of these retirees and their families violated the terms of their respective plans.  The Court will examine each retirement contract individually to determine the provisions of the plan KWC actually violated.

Pursuant to the terms of the December 17, 2001, retirement contract between John R. Combs and KWC, Plaintiff John Combs is entitled to a Medicare supplement provided and paid for by KWC.  KWC also agreed to provide and pay for the cost of health insurance for

---

[7]Even utilizing the arbitrary and capricious standard of review, the Court would find that KWC's actions violated the terms of the Plan and these Plaintiffs are entitled to recovery of the benefits.

[8]The retirement contracts of Lew Dew, Barbara Johnson, and John Cockrum provide the same medicare supplement benefits provided to all retirees pursuant to the faculty handbooks in existence at the time these Plaintiffs retired.

Vicki Combs and Jody Combs "until each of them is 65 years of age at which time each of them will receive a Medicare supplement." (Combs Contract at 2.)  By terminating the Combs' health insurance benefits, including Medicare supplement benefits, KWC violated the terms of the plan.[9]

Pursuant to the terms of the March 29, 1994, retirement contract between Lee Dew and KWC, Plaintiff Lee Dew is currently entitled to a Medicare Supplement for himself paid by KWC.  However, under the clear terms of the retirement contract, Plaintiff Aloma Dew is only entitled to continued dependent coverage "until age 65 under the same provisions and premium charges offered active employees." (Dew Contract at 2, ¶ 3.)[10]  By terminating Plaintiff Lee Dew's medicare supplement, KWC violated the terms of the plan.  Similarly, if Aloma Dew has not attained the age of 65, KWC violated the terms of the plan with respect to the termination of her dependant coverage.

Under the terms of the May 2, 1996, retirement contract between D. Wayne Sandifer and KWC, Plaintiff D. Wayne Sandifer is currently entitled to a medicare supplement paid

---

[9] Defendant asserts that Vicki and Jody Combs were not participants or beneficiaries of the Plan when KWC terminated retiree health insurance coverage in August of 2005.  Vicki Combs terminated her medical coverage with KWC effective May 31, 2005 because she had other coverage through her employer.  Similarly, Jody Combs terminated his medical coverage in February of 2005.  As a result, Defendant argues that neither can state a claim based upon a termination of benefits that occurred in August of 2005.

The fact that Vicki and Jody Combs may have chosen to terminate their health insurance coverage in early 2005 does not mean that they do not qualify as current beneficiaries under the Plan if they should choose to reinstate the coverage.

[10]Under the relevant provisions of the faculty handbook, only retired faculty were entitled to medicare supplement benefits.  See KWC 000095, KWC 000524.

for by KWC.  (Sandifer Contract at 2, ¶ 4.)  By terminating Plaintiff D. Wayne Sandifer's medicare supplement, KWC violated the terms of this plan.

Pursuant to the terms of the March 11, 1993, retirement contract between Barbara A. Johnson and KWC, Barbara and Stanley Johnson are each entitled to a medicare supplement provided by KWC.  Depending on the age of Stanley Johnson, KWC may still be obligated to provide for dependent medical coverage under this contract as well.  (Johnson Contract at 2, ¶ 4.)  By terminating the Johnsons' medicare supplement, KWC violated the terms of the plan.

Under the terms of the March 11, 1993, retirement contract between John Robert Cockrum and KWC, John Cockrum is entitled to a medicare supplement provided by KWC. (Cockrum Contract at 2, ¶ 4.) However, under the clear terms of the retirement contract, Plaintiff Jane Cockrum is only entitled to continued dependent coverage "until the age of 65 under the same provisions and premium charges offered to active employees." (Id.)  By terminating Plaintiff John Cockrum's medicare supplement, KWC violated the terms of this plan.  Similarly, if Jane Cockrum has not attained the age of 65, KWC violated the terms of the plan with respect to the termination of her dependant coverage as well.

For these reasons, the Court concludes that the ERISA plans in question created vested rights to health insurance coverage and medicare supplement coverage, where applicable.  By terminating these retirees coverage, KWC violated the terms of the Plans and, as a result, the Plaintiffs are entitled to recovery of benefits.

### e. The *Sprague* Decision

Defendant relies on Sprague v. General Motors Corporation, 133 F.3d 388 (6th Cir. 1998), for its position that Plaintiffs are not entitled to continued health care benefits, including medicare supplements. Defendant maintains that Sprague directs that a welfare plan cannot be altered based on statements contained in non-plan documents. Thus, according to Defendant, the language in the retirement contracts and Faculty Handbooks cannot be used to create a vested right to lifetime health insurance coverage where such right does not exist in the Employee Health Care Plan.

In Sprague, a class of retirees brought an ERISA action against their former employer, General Motors, seeking a judgment requiring GM to furnish them with basic health care coverage at no cost for their lifetime. GM maintained a health care benefits plan that provided health care coverage for its employees. GM regularly provided its employees with booklets containing summaries of the company's health insurance policies and programs. The booklets contained language providing that it would provide basic health care coverage at GM's expense for an employee's lifetime. However, most of the booklets also contained a provision notifying employees that GM reserved the right to change or terminate the health care plan at any time. Sprague, 133 F.3d at 394 ("GM reserves the right to modify, revoke, suspend, terminate, or change the Program, in whole or in part, at any time . . . .").

Additionally, salaried employees who accepted early retirements were often asked to sign documents demonstrating their acceptance of the terms of a particular program under which they were retiring. These "statements of acceptance" all indicated that the employee

24

had reviewed the benefits applicable under the program and accepted them. Id. at 395. Additionally, in the course of explaining the special early retirement programs, GM made numerous oral and written representations about the health care benefits available to early retirees. Some of the written summaries often informed retirees that their health insurance would be paid for by GM for life. Id.

After these employees retired, GM announced changes in the health care coverage for both salaried employees and retirees. Plaintiffs then challenged the legality of the changes to the health care plan. The plaintiffs in Sprague alleged that "GM had bound itself to provide salaried retirees and their spouses basic health coverage for life, entirely at GM's expense." Id. at 395. The plaintiffs argued that the right to coverage vested upon retirement so the coverage could never be changed. Id. Plaintiffs argued that although GM unambiguously reserved its right to amend or terminate the plan in most summary plan descriptions (SPDs), language stating that the employees' health coverage could be paid for life "at no cost to" the employees "created an ambiguity within the summaries." Id. at 401. The Sixth Circuit rejected this argument finding "no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change." Id. The Sixth Circuit adopted the Third Circuit's approach holding that "'the promise made to retirees was a qualified one: the promise was that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses that preserved the company's right to terminate the plan under which those benefits are

25

provided.'" Id. (citing In re Unisys Corp. Retiree Med. Ben. Erisa Litigation, 58 F.3d 896, 904 n. 12 (3d Cir. 1995)).

The Sixth Circuit also rejected the plaintiffs' theory that GM had bilaterally contracted with each early retiree to vest benefits.  The plaintiffs had argued that the promises and representations GM had made to them were enforceable "either as modifications to the general plan, or as ERISA plans themselves, or as a matter of federal common law." Id. at 402.  The Sixth Circuit determined that the "plaintiffs could not invoke oral statements by GM personnel in order to modify the terms of the written plan." Bertram, 107 F. Supp. 2d at 968.  Specifically, the Sixth Circuit held that the "clear terms of a written employee benefit plan may not be modified or superseded by oral undertakings on the part of the employer.'" Sprague, 133 F.3d at 403 (citation omitted).

Similarly, the Sixth Circuit found that the plan was not modified or superseded by the written statements signed by some of the named plaintiffs.  The Sixth Circuit found it significant that the statements of acceptance merely said that the employee "ha[d] reviewed the benefits applicable to [him]" and "accept[ed] them." Id. at 403.  The Sixth Circuit noted that instead of modifying the welfare plan, the language incorporated the plan's terms.  Id. The Sixth Circuit also found that the statements of acceptance did not purport to be an ERISA plan and did not satisfy the requirements to be an ERISA plan.  According to the Sixth Circuit, "[f]or us to sanction informal 'plans' or plan 'amendments' – whether oral or written – would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place." Id. at 403.

26

The Court finds that Sprague is distinguishable from the present case and does not prohibit recovery of continued health care benefits, including medicare supplements, by the retirees who entered into individual retirement contracts with KWC.

First, the Sprague case involved retirement packages offered en masse by General Motors to thousands of employees.  In the present case, KWC negotiated individual retirement contracts that were written, signed by a representative of KWC, and were separate from the general retirement program offered to the other KWC faculty members.

Second, the nature of the written agreements in Sprague and in the present case differ significantly.  The "statements of acceptance" signed by some of the GM retirees in Sprague were not individually negotiated and acknowledged only that the retiree had reviewed the benefits applicable to him and accepted them. In contrast, the retirement contracts in the present case were individually negotiated, clearly guaranteed and described the medical coverage benefits in question, and set forth the duration of coverage – until age 65 and a medicare supplement thereafter.

Third, unlike Sprague, the retirement contracts at issue in the present case are not informal plans or informal plan amendments.  The informal plans at issue in Sprague were summaries of the retirement packages and "statements of acceptance" signed by some of the retirees.  In contrast, the negotiated early retirement contracts at issue in the present case are independently negotiated contracts, supported by separate consideration, and grant the individual retirees benefits that are in excess of the minimum standards guaranteed by ERISA or provided under the general KWC Employee Health Care Plan.  See United Steelworkers

27

of America, Local 2116, 860 F.2d at 197; In re White Farm Equipment Co., 788 F.2d at 1193.

Finally, contrary to the arguments by Defendant, a finding that these individually negotiated retirement contracts are enforceable either as ERISA plans, amendments to KWC's Employee Health Care Plan, or as a matter of federal common law does not undermine ERISA law as discussed in Sprague. Such a finding would not "leave the door open to any number of disgruntled beneficiaries to segregate, selectively, memoranda and brochures containing favorable *but incomplete* information about their benefits, and to fashion them as creating an independent ERISA plan." Richmond, 227 F. Supp. 2d at 811-812. Instead, such a finding allows employees who individually negotiate retirement contracts with their employer to enforce their rights under the terms of the new plan. Far from undermining ERISA law, it appears to the Court that enforcement of the retirement contracts under ERISA actually comports with the purpose of ERISA.

## 2. Claims for Benefits of the Brittons and Davenports

### a. Brittons

On October 15, 1996, KWC negotiated retirement contracts with Joe S. Britton and Margaret B. Britton. Throughout their briefs, Plaintiffs suggest that the Brittons' retirement contracts should be analyzed just as the other Plaintiffs who negotiated early retirement contracts. The Court has held that the other negotiated early retirement contracts vested welfare benefits for the life of the retiree because the contract language did not reserve the right to change, modify or terminate the benefits. However, unlike the other contracts, the

Brittons' contracts stated that their retirement benefits  "are in accordance with the Faculty Handbook." Thus, it cannot be said that KWC intended to grant the Brittons retirement benefits which differ from the terms of the Faculty Handbook.  Accordingly, the Court will analyze the Brittons' claims consistent with those by the Davenports.

### b. Davenports

Donald Davenport retired as a professor in 1999 and his wife, Plaintiff Shirley Davenport, retired from her position as secretary in the library in 2000.  Donald and Shirley Davenport do not have written retirement contracts with KWC.  Instead, they retired in reliance on the versions of §§ 3.1.2 and 3.2.3 of the Faculty Handbook which the Davenports claim guaranteed them Medicare supplement coverage during their retirement. The Faculty Handbook in existence at the time Donald Davenport retired was the 1998 Handbook.  The Employee Handbook in effect at the time Shirley Davenport retired was the 1996 Employee Handbook.

### c. Claims for Benefits

The Brittons and Davenports rely on the Faculty Handbook as providing the vesting of the health care benefits.  They assert that § 3.1.2, § 3.2.3, and § 3.1.3 of the relevant Faculty Handbook creates a continuing obligation for KWC to provide continued health insurance, including medicare supplements, for them.  According to these Plaintiffs, none of the relevant sections of the Faculty Handbooks or the Employee Handbook restrict the duration of these health care benefits, nor do any of them contain a reservation of the right to terminate.  In contrast, they cite § 3.1.1.2 in which KWC specifically reserved the right

to modify or discontinue an annuity plan provided by KWC to its retirees.  Plaintiffs find this significant given the fact that KWC did not include a similar provision in the Faculty Handbook reserving such a right for the health insurance provided to retirees pursuant to § 3.1.2 (Normal Retirement), § 3.1.3 (Early Retirement), or § 3.2.3 (Medical Insurance for Retirees).  Accordingly, the Plaintiffs maintain that KWC clearly communicated to all KWC retirees that the health insurance benefits were provisions for life without a right to terminate. The Court disagrees.

The Sixth Circuit in <u>Sprague</u> rejected the argument by GM retirees that oral and written representations, including booklets and summaries, provided to them concerning the early retirement program constituted modifications to the general plan or ERISA plans themselves, or could be enforced as a matter of federal common law.  <u>Sprague</u> instructs that statements in informal plan documents cannot be used to create a vested right to lifetime health insurance where such rights do not exist in the ERISA plan.  <u>Sprague</u>, 133 F.3d at 403. It is undisputed that the relevant Employee Health Care Plans permitted KWC to amend or terminate benefits.  It is also undisputed that while the Faculty Handbooks in question provide that the retirees "are entitled" to health insurance benefits, the Faculty Handbooks also specifically reference the SPDs of the ERISA Employee Health Care Plan.  <u>See, e.g.</u>, 1994 Faculty Handbook, § 3.2.1 ("The Comprehensive Medical Expense Coverage is summarized in the Group Plan Booklet given to employees when they enroll.  Employees are provided revised summaries of coverage when any revisions are made in the plan." KWC 000522.).  Therefore, with respect to the Faculty Handbook's discussion of the health

insurance benefits of both active employees and retirees, the Faculty Handbook is merely a summary of the insurance benefits for which faculty at KWC are eligible.  Thus, under Sprague, the Faculty Handbook – an informal plan document – does not override the terms of the ERISA Employee Health Care Plan.

For these reasons, the Court denies the Brittons' and Davenports' claims for ERISA benefits.

## B.  Estoppel

In the event that Plaintiffs' ERISA claims for benefits fail, Plaintiffs assert that the principles of equitable estoppel preclude KWC from terminating their health care benefits because KWC individually negotiated early retirement contracts and provided Faculty Handbooks that reasonably led the Plaintiffs to believe that they, their spouses, and their dependent children would receive health insurance benefits for their lifetime.  Defendant asserts that KWC unambiguously reserved the right to amend its Employee Health Care Plan to terminate Plaintiffs' benefits; and therefore, Plaintiffs can not rely on an equitable estoppel theory to alter the terms of the unambiguous health care plan.  Having found in favor of the Plaintiffs, John Combs, Vicki Combs, Jody Combs, Lee Dew, Aloma Dew, D. Wayne Sandifer, Barbara Johnson, Stanley Johnson, John Cockrum, and Jane Cockrum, on their § 1132(a)(1)(B) ERISA claims for benefits, the Court need not address these Plaintiffs' equitable estoppel claims.  The Court will only address the equitable estoppel claims of the Brittons and the Davenports.

The Sixth Circuit recognizes that equitable estoppel may be a viable theory in ERISA

31

cases seeking recovery of welfare plan benefits.  Sprague, 133 F.3d at 403 (citing Armistead

v. Vernitron Corp., 944 F.2d 1287, 1298 (6th Cir. 1991)).  To prevail on a claim for equitable

estoppel in the ERISA context, a plaintiff must establish five elements:

> (1) there must be conduct or language amounting to a representation of
> material fact; (2) the party to be estopped must be aware of the true facts; (3)
> the party to be estopped must intend that the representation be acted on, or the
> party asserting the estoppel must reasonably believe that the party to be
> estopped so intends; (4) the party asserting the estoppel must be unaware of the
> true facts; and (5) the party asserting the estoppel must reasonably or
> justifiably rely on the representation to his detriment.

Id.  "Principles of estoppel, however, cannot be applied to vary the terms of unambiguous

plan documents; estoppel can only be invoked in the context of ambiguous plan provisions."

Sprague, 133 F.3d at 404.

With respect to the Brittons and Davenports, the Court finds that these Plaintiffs are

not entitled to continued health insurance benefits or medicare supplements from KWC under

the doctrine of equitable estoppel.  First, the Employee Health Care Plans in question are not

ambiguous.  Plaintiffs contend that the reservation of rights provision contained in the SPDs

is qualified in that KWC agreed not to amend the plan to retroactively affect benefits.

Specifically, the SPDs provide that "[n]o amendment may retroactively affect employees'

benefits unless necessary to conform the Plan to the requirements of ERISA, the Internal

Revenue Code of 1896, as amended, or regulations issued under those statutes." (See 1994

SPD at 48.)  Contrary to Plaintiffs' argument, KWC did not terminate Plaintiffs' benefits

retroactively.  See, e.g., Wulf v. Quantum Chemical Corp., 26 F.3d 1368, 1377 (6th Cir.

1994)(describing a retroactive amendment as an amendment made in December 1989 to be

effective April 15, 1989). On June 3, 2005, KWC informed the retirees by letter that their health insurance coverage would terminate effective August 15, 2005. There was no retroactive termination of the health care benefits.

Second, the Brittons and Davenports cannot establish all of the elements needed to support an equitable estoppel claim. A "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of the plan documents available to or furnished to the party." Sprague, 133 F.3d at 404. As discussed above, the SPDs in effect at the time the Brittons and Davenports retired granted KWC the right to amend or terminate the Plan. Additionally, the Faculty Handbooks on which the Brittons and Davenports rely clearly reference the SPDs of the Employee Health Care Plan, and thereby incorporate the reservation of rights provision found in all of the SPDs. (See, e.g., 1994 Faculty Handbook, § 3.21). In the face of KWC's "clearly-stated right to amend," reliance on statements contained in the Faculty Handbooks or statements made by representatives of KWC suggesting the contrary "was not, and could not be, reasonable or justifiable." Sprague, 133 F.3d at 404. For these reasons, the Court finds that the Brittons' and Davenports' claims based on a theory of equitable estoppel are dismissed.

### C. ERISA Breach of Fiduciary Duty Claim

Having found in favor of the Plaintiffs, John Combs, Vicki Combs, Jody Combs, Lee Dew, Aloma Dew, D. Wayne Sandifer, Barbara Johnson, Stanley Johnson, John Cockrum, and Jane Cockrum, on their § 1132(a)(1)(B) claims for benefits, the Court need not address these Plaintiffs' ERISA breach of fiduciary duty claims. The Court will only address the §

33

1132(a)(3) claims of the Brittons and the Davenports.

Section 1132(a)(3) of ERISA permits an individual participant or beneficiary to maintain a private right of action for breach of fiduciary duty for "appropriate equitable relief." Allinder v. Inter-City Products Corp., 152 F.3d 544, 551 (6th Cir.1998).  See also Varity Corp. v. Howe, 516 U.S. 489 (1996).  Specifically, § 1132(a)(3) provides that a civil action may be brought by a participant or beneficiary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  The Sixth Circuit has recognized an equitable claim by a participant against an ERISA plan fiduciary arising out of 29 U.S.C. § 1132(a)(3) when a fiduciary misleads a participant or beneficiary. See Krohn v. Huron Memorial Hospital, 173 F.3d 542, 546 (6th Cir. 1999).

"A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 432 (6th Cir. 2006)(quoting Krohn, 173 F.3d at 547)).  "'Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'" Id. (quoting Drennan v. Gen. Motors Corp., 977 F.2d 246, 251 (6th Cir.1992)).  See also Sprague, 133 F.3d at 405.  To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must

34

show:

> (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations;
>
> (2) that these [representations] constituted material misrepresentations; and
>
> (3) that the plaintiff relied on those misrepresentations to [his] detriment.

Moore, 458 F.3d at 433 (citing James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir.2002)). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." Id. Further, "a plaintiff's reliance on the misrepresentation must be 'reasonable.'" Id. (citations omitted).

With respect to the breach of fiduciary duty claims asserted by the Brittons and Davenports, the Court finds there is no factual basis for claiming a misrepresentation. In order to sustain a breach of fiduciary duty claim, the Sixth Circuit requires a misrepresentation about the availability or extent of benefits. There is no evidence that prior to their retirement, the Brittons or Davenports relied on or, for that matter, knew about the alleged representations or misrepresentations made by Cindra Stiff to James McIntosh, Jerry Trinkle, and John and Vicki Combs. Additionally, the SPDs in question do not provide for continued medical coverage or medicare supplements. And, as discussed above, the faculty handbooks in question provide only summaries of the health care plan. KWC was not required to disclose in its SPDs or faculty handbooks that the Plan was subject to amendment or termination. Sprague, 133 F.3d at 405. Furthermore, in Sprague, this Court made clear

35

that "there can be no fiduciary duty to disclose the *possibility* of a future change in benefits."
133 F.3d at 406; see also Voyk v. Brotherhood of Locomotive Engineers, 198 F.3d 599,
605-06 (6th Cir.1999). Thus, the Court finds that no genuine issues of material fact exist and
summary judgment on the Brittons' and Davenports' breach of fiduciary duty claims is
appropriate.

## V.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.  The cross-motions for summary judgment [DN 19, DN 20] are **granted in part
and denied in part** consistent with this Memorandum Opinion and Order.

2.  Plaintiffs, John Combs, Vicki Combs, Jody Combs, Lee A. Dew, Aloma Dew, D.
Wayne Sandifer, Barbara Johnson, Stanley Johnson, John Cockrum, and Jane Cockrum, are
entitled to the promised health care benefits, including medicare supplements where
applicable, in accordance with this Opinion.

3.  The claims of Plaintiffs, Joe Britton, Margaret Britton, Donald Davenport and
Shirley Davenport, are dismissed.

4.  With respect to the issue of damages, the matter is referred to the United States
Magistrate Judge for settlement.  In the absence of a settlement, the Magistrate shall enter
a scheduling order designed to bring the issue of damages to a final resolution.

cc: counsel of record